The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts as those reached by the Deputy Commissioner, with some modification but modifies the conclusions and holding of the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. A general power of attorney from Francis W. Ryburn to Mark W. Ryburn was stipulated into evidence as Stipulated Exhibit 1.
2. A general power of attorney from Sam Sharpe Ryburn to Mark W. Ryburn was stipulated into evidence as Stipulated Exhibit 2
3. Employer's Quarterly Report of Employees' Wages for 1995 was stipulated into evidence as Stipulated Exhibit 3.
4. Employer's Quarterly Report of Employees' Wages for 1996 was stipulated into evidence as Stipulated Exhibit 4.
5. Employment Security Commission of North Carolina Report of Employee's Wages for January through June, 1997 was stipulated into evidence as Stipulated Exhibit 5.
6. The issues before the Commission are: (i) whether the North Carolina Industrial Commission has jurisdiction in this matter; (ii) whether plaintiff sustained a compensable injury by accident or by specific traumatic incident arising out of or in the scope of her employment with defendant; and (iii) if so, what compensation, if any, is due the plaintiff.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. On December 18, 1997, Samuel Sharpe Ryburn and Francis W. Ryburn gave general powers of attorney to their son, Mark W. Ryburn. These general powers of attorney enable Mr. Ryburn to manage Mr. and Mrs. Ryburn's affairs, interest and property of every kind. These powers of attorney do not enable Mark W. Ryburn to engage in the unauthorized practice of law for his parents. Mr. Ryburn may not represent his parents in this matter.
2. Samuel Sharpe Ryburn is a retired corporate executive who for a number of years had employed Certified Nursing Assistants to render care for his wife, Francis W. Ryburn, and more recently for himself. During the years of 1995, 1996 and through June, 1997, Mr. Ryburn employed three full-time Certified Nursing Assistants. Each of these three nursing assistants would work one of the following shifts: 7:00 a.m. through 3:00 p.m., 3:00 p.m. through 11:00 p.m., and 11:00 p.m. through 7:00 a.m. Additional nursing assistants were hired to substitute for the three principle nursing assistants or to assist the three principle nursing assistants in carrying out their duties. The nursing assistants employed by the Ryburns were to provide care at the direction of Mr. and Mrs. Ryburn or one of the Certified Nursing Assistants who served in the capacity of supervising the assigned shifts and designating duties.
3. Samuel S. Ryburn and Francis W. Ryburn interviewed all of the Certified Nursing Assistants and other nursing assistants in their employ. These nursing assistants were paid a weekly salary and paid time and a half for over-time worked.
4. Each of the nursing assistants employed by Samuel S. Ryburn and Francis W. Ryburn were paid through a book-keeping service. The employees were given W-2 Forms for the services rendered and taxes and Social Security were withheld.
5. Samuel S. Ryburn, Francis W. Ryburn and the Certified Nursing Assistant serving in a supervisory capacity would direct the activities of the other nursing assistants employed. The principle responsibilities of the Certified Nursing Assistants were: to administer medications, to assist Mr. and Mrs. Ryburn in getting out of bed, to clothe Mr. and Mrs. Ryburn, to bathe Mr. and Mrs. Ryburn, and perform any other services necessary in carrying on Mr. and Mrs. Ryburn's normal activities.
6. Mr. and Mrs. Ryburn employed a full-time housekeeper whose primary responsibilities were to maintain the household and to prepare meals.
7. Mark W. Ryburn would also supervise the activities of the nursing assistants and the housekeeper within his parents' employ.
8. Samuel S. Ryburn developed and controlled the nursing enterprise within his household. This enterprise is similar to the personal care services provided in a nursing home. The distinction in these facts is that Mr. and Mrs. Ryburn were provided with around the clock care by these nursing assistants and Mr. and Mrs. Ryburn directed their care.
9. The Certified Nursing Assistants were not domestic employees of Samuel S. Ryburn or independent contractors. The Certified Nursing Assistants were employees of Samuel S. Ryburn under the provisions of the N.C. Workers' Compensation Act.
10. The North Carolina Workers' Compensation Act applies to the full-time Certified Nursing Assistants employed by Samuel S. Ryburn.
11. Plaintiff was 37 years old at the time of the hearing before the Deputy Commissioner.
12. Plaintiff is married and has two sons ages thirteen and nineteen. Plaintiff earned a GED and received her certification as a nursing assistant from Central Piedmont Community College.
13. On March 1, 1995, plaintiff was employed by Samuel S. Ryburn and Francis W. Ryburn as a Certified Nursing Assistant to provide patient care from 11:00 p.m. to 7:00 a.m. Carolyn Davis, the supervising Certified Nursing Assistant within the home, contacted plaintiff to apply for the position.
14. Mr. and Mrs. Ryburn agreed to pay the plaintiff $400.00 per week and to pay her time and a half for any overtime. It was not unusual for the plaintiff or any of the other two principle Certified Nursing Assistants to work overtime.
15. During the time the plaintiff was employed by Mr. and Mrs. Ryburn, Pam Faulk and Carolyn Davis were the other Certified Nursing Assistants working within the Ryburn household.
16. On November 1, 1996, plaintiff was moving Francis W. Ryburn into her bed when she slipped on a rug beside the bed. Plaintiff felt a sudden sharp pain in her lower back. Plaintiff informed Mrs. Ryburn and Carolyn Davis that she had injured her back while assisting Mrs. Ryburn.
17. Initially, plaintiff assumed she had pulled a muscle in her back and that her condition would improve. However, her pain continued to increase and in November, 1996, plaintiff went to the emergency room at the Carolinas Medical Center. It was determined that plaintiff possibly had pulled muscles and was prescribed muscle relaxers to relieve the pain.
18. The pain did not subside and when plaintiff approached Samuel S. Ryburn concerning her pain, Mr. Ryburn instructed plaintiff to see a chiropractor. Plaintiff went to Keith Chiropractic Clinic on Central Avenue in Charlotte, North Carolina. Steven S. English, D.C. determined that plaintiff had low back pain. Plaintiff did not respond to treatment and was referred for an orthopedic consultation.
19. Plaintiff presented herself to Carolinas Medical Center's Orthopedic Clinic. She was examined by Steven David, M.D., on March 11, 1997. Plaintiff indicated to Dr. David that she had lower back pain and had experienced this pain for the last six months. Dr. David prescribed medication for plaintiff's pain and suggested that she follow up with him in four to six weeks.
20. Plaintiff was unable to perform her normal duties for Mr. and Mrs. Ryburn. In order to receive relief from her pain, plaintiff was required to lie on the floor. Plaintiff was unable to maintain her normal work patterns and missed time from work.
21. Plaintiff was terminated from her employment on April 1, 1997. Samuel S. Ryburn indicated that because she could no longer perform her normal duties, her services were no longer needed.
22. In April, 1997, plaintiff's pain had increased to the point that she again returned to Steven David, M.D. Dr. David referred plaintiff to physical therapy two times per week for one month.
23. Plaintiff went to physical therapy sessions and also used the suggested home exercises for her back. However, the pain did not subside and she went to the Miller Orthopedic Clinic on June 20, 1997. Plaintiff was referred for a CT Scan which showed that plaintiff had a left paracentral disc protusion at L3-4 affecting the nerve root. Plaintiff had lifting restrictions of thirty pounds.
24. Plaintiff returned to Miller Orthopedic Clinic in July, 1997, and conservative treatment was prescribed.
25. Plaintiff was unemployed until July 15, 1997 when she became employed by Southminster Nursing Home. Plaintiff was employed as a nursing assistant working 40 hours per week at $10.00 per hour and worked until August 30, 1997.
26. Plaintiff relocated to Orlando, Florida and was subsequently employed by Clylatts Nursing Home from December 22, 1997 through February 12, 1998. Plaintiff was employed working 8 hours per day 4 days per week. Plaintiff was paid $7.50 per hour. She was unable to continue working due to the back pain.
27. Plaintiff was subsequently employed by National Healthcare on February 25, 1998. Plaintiff is employed as a nursing assistant. Plaintiff earns $6.50 per hour. After working approximately one week, plaintiff took a leave of absence because of her pain.
28. While assisting Francis W. Ryburn in her bed, plaintiff sustained a specific traumatic incident on November 1, 1996.
29. As a result of the compensable injury, plaintiff was unable to work from April 1, 1997 until the present with the exception of brief periods of employment.
30. Plaintiff's average weekly wage was $410.67 yielding a compensation rate of $273.79.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Samuel S. Ryburn and Francis W. Ryburn regularly employed three employees and therefore are subject to the provisions of the N.C. Workers' Compensation Act. The North Carolina Industrial Commission has jurisdiction over this case. N.C. Gen. Stat. §§ 97-2; 97-13.
2. On November 1, 1996, plaintiff sustained an injury by accident in that she sustained a specific traumatic incident of work assigned arising out of and in the course of her employment with the defendant-employer. N.C. Gen. Stat. § 97-2(6).
3. As a result of her compensable injury on November 1, 1996, plaintiff is entitled to temporary total disability compensation from April 1, 1997 until the present and continuing until further Order from this Commission. The defendant is entitled to a credit against compensation due plaintiff for the wages she earned while working brief periods from April 1, 1997 to the present. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to all medical treatment that would effectuate a cure or lessen plaintiff's pain arising out of her compensable injury on November 1, 1996. N.C. Gen. Stat. § 97-25.1.
5. There has been no determination as to any permanent partial disability at this point. N.C. Gen. Stat. § 97-31.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to temporary total disability compensation from April 1, 1997 until the present and continuing until further Order from this Commission subject to a credit for the defendants for wages plaintiff earned during brief periods of employment from April 1, 1997 until the present. The compensation in arrearage shall be paid in a lump sum.
2. The defendant shall pay all medical expenses resulting from plaintiff's compensable injury on November 1, 1996. The defendant shall pay for the medical services rendered by the Carolina Medical Center Orthopedic Clinic, Miller Orthopedic Clinic, Keith Chiropractic Clinic and Outpatient Physical Therapy. Plaintiff shall immediately present herself to an orthopedic specialist to determine her current condition as well as to determine the appropriate course of care. The defendant is to pay for the evaluation by an orthopedic specialist and any subsequent care.
3. The defendant shall pay the costs.
This the ___ day of November 1998.
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ DIANNE C. SELLERS COMMISSIONER